The next case on the docket is agenda number 13. This is a consolidated case 130862-130863. Melissa Andros et al., Martin Produce, Applee and Jack Tuchten Wholesale Appellants. Now, my understanding is the appellants will be splitting their time in half, 10 minutes and 10 minutes, and then for rebuttal, 5 minutes and 5 minutes, and of course, the appellee will have the full 20 minutes. Okay? You may proceed. Please record, counsel. My name is Nicholas Paralisi of Litchfield Tahoe. I am counsel for third-party defendant appellant Jack Tuchten Wholesale Produce. Here with me is my partner Phil Litchfield. I can get into the details. It's kind of a very complex set of facts. It's addressed in our briefs, obviously, but I'll just get right to some of the main issues I think that are presented with this appeal. This is a UCC notice case. The UCC has a notice requirement that must be satisfied as a prerequisite for a buyer to pursue a breach of warranty claim against the seller. That provision is set forth in Section 26073A, and I'm just going to quote what it says. I quote, where a tender has been accepted, the buyer must, within a reasonable time, after he discovers any breach, notify the seller or be barred from any remedy. Close quote. May I ask you a threshold question? Of course, yeah. Obviously, there's been a lot of litigation in this case, and different ideas, amendments to complaints, dismissals, there's lots of things going on over since July of 2016. Just so that I can understand where we are today, my understanding is that in, I think this is right, June of 22, Martin, who is the buyer of the cilantro from the wholesalers, who then sells to the restaurant, Martin filed some kind of third-party action, and I'm being real careful here because there were contribution claims earlier that were dismissed, etc. In any case, Martin filed an amended complaint against the wholesalers, and my understanding is that the allegations in that complaint was that if Martin were to be found liable to Carbone, the restaurant, the wholesalers would be liable in a pro grata share. I think that's the argument. It's this contingent idea. If Martin is found liable to the restaurant, then the theory was the wholesalers would be liable as well. Now, my understanding is that in July of 2023, the restaurant dismissed its charges against Martin. So therefore, the theory of the claim against the wholesalers would fail, it seemed to me. So the charge of the contingent claim that we're going to be talking about, the contingency, the possibility of liability to Carbone, that was dismissed voluntarily. Where are we with that? That is correct, that Carbone did voluntarily non-suit the claims against Martin. They have since refiled their action within the one-year period to now pursue their claims again against Martin, and there is currently a trial date set for that. Those claims that Carbone has against Martin, I think there's a November of 2025 trial date currently set. So they were refiled? Yes. Do we have any finality problem here? I mean, that was the whole reason they voluntarily dismissed, is so that there would be a finality and therefore this appeal could go forward. Yeah, that's a fair question. I think at the time this appeal commenced, there was no pending action which allowed a public jurisdiction. Since that time, you're correct, there has been three filings, right? So it's not final anymore? It is not final anymore from that perspective, yes. Okay, thank you. Counsel, I just have one quick thing I wanted to point out. When you were citing the statute, you left out the language, or should have discovered, and I wondered, is that in play here? You said after he discovers any breach, but you left out, or should have discovered. Yeah, that is absolutely correct. Is that in play here, that language? I don't think so. I mean, here, what happened, just briefly in terms of the facts, when the Chicago Department of Public Health got involved at the restaurant, because there were a number of people that got sick, there was basically an outbreak that occurred at the restaurant, the CDPH ultimately determined that they believed it was from the cilantro, and they reached out to the supplier of the cilantro to the restaurant, that was Martin. That was in July of 2016. At that point, we were never notified by the CDPH or Martin at any point in time about the illnesses, the outbreak, any investigation at all. So from that perspective, we didn't have any knowledge of an issue. Martin did have knowledge, so in terms of the language, after they discover the breach, or at least they should have discovered the breach, at that point when Martin is notified by the CDPH, I think at that point they're on notice that there's a potential issue. But you all remained in the dark. We didn't learn about any information about the outbreak until we were sued, I think first by Carbone in a third-party action for contribution. And that was late 2017. October 17th. You were sued by the restaurant as defendants with Martin, as well as the wholesalers. We were served sometime in early December of 2017, I believe. What moment do you think triggered the duty to give notice? For Martin to give notice to us? Well, I think when they received the notice from the CDPH, that's when they should have provided notice to us. Because one of the key issues with regard to the CCC notice requirement is for us to be able to do a proper and thorough investigation, timely, and that's especially important here with food products because they're perishable and because these are grown in fields and harvested. There's all types of evidence that potentially is available to Jack Tuckton as a seller of fresh produce to investigate what happened. And I know that you've split your time, but so you agree that you were in the case in October of 2017. You never filed a motion to dismiss based on lack of notice all the way through, correct? That was a claim by Carbone. They had tort claims and they had a breach of warranty claim, I believe, and he did actually file a motion to dismiss the breach of warranty claim. And I think they non-sued that. And maybe 22. No, it would have been a lot earlier because the Carbone claim would have been probably 2018. So ultimately what Carbone had against Jack Tuckton and that third-party complaint were essentially tort claims. And they were sued for their own mishandling of cilantro, which may have actually led to the outbreak. So again, with respect to the notice issue, what the appellate court addressed was the first exception to this court's conic decision, the actual knowledge exception. So with respect to that, that second exception dealing with personal injury complaints where a personal injury plaintiff can actually use the finding of the complaint as a substitute for UCC notice, that doesn't apply here because obviously Mark is not a personal injury plaintiff. So really we're left with this actual knowledge exception. And it's important to understand, I think, that the notice and the knowledge that is provided to Tuckton has to be of Martin's claim for breach of implied warranty. We didn't have any knowledge that Martin was pursuing a claim for breach of implied warranty. The only thing we knew through those prior complaints was that these personal injury plaintiffs were making a claim, tort claims, et cetera. Counsel, aren't those allegations sufficient for the actual knowledge exception to kick in? Not under the conic decision, I don't believe, because the only plaintiff or type of plaintiff that can rely upon allegations are a consumer personal injury plaintiff. And the court specifically stated in that decision that merchant buyers aren't entitled to that same exception. It's really just the actual knowledge exception, which the three cases that we talked about in our brief that this court relied upon, Malawi, Crest Container, Overland, really talk about what actual knowledge means. It has nothing to do with allegations by others. It has to do with giving us the right to go and inspect the defect of where the buyer has put us on notice. And we actually go there in all those cases. What do you understand notice to mean under the statute? What's your understanding of what notice means under the statute in question here? Notice of a buyer's claim of a breach of warranty claim, as set forth under the UCC, that one section. So in this case, Martin's claim that they were going to be pursuing a breach of warranty claim. Good morning to the court, to the justices and counsel. My name is Tom Wolfe. I represent one of the other defendant appellants, Lagolera Produce. And I just wanted to pick up where Mr. Paralisi left off. Obviously, my client is a wholesaler as well. We stand in the same shoes as Jack Tuckton, so the arguments should apply equally to both of us. The issues we're having with the appellate court's decision is principally they made four errors. The first, Justice Cunningham, which you referenced, were the allegations. Are they enough to satisfy actual knowledge? If you read, though, the conic decision from this court, the way that the actual knowledge exception was written was that it's knowledge of the defect, not knowledge of an allegation. And I think that's where the appellate court really got tripped up, because they were treating actual knowledge and direct notice sort of the same, that the evidence needed to prove either could be the same. I think it's self-evident that it's not, because one is an exception to the other, necessarily meaning that there has to be some different type of evidence. And the court had asked, well, what do you mean by notice in the context of an allegation? Allegations are akin to notice. This is coming from the buyer's perspective. Here's what we think, seller, is wrong with your product that you sold us. Knowledge is subjective to the seller. What did they witness with their product firsthand that was defective? And I believe that the principal examples provided in the conic decision prove that. It all comes from the seller's perspective as to what was wrong with the product. In the Malawi case, it's the hospital pulling the prosthetic limb out of a patient that's broken. They witnessed the defect. Same with the Crest container case. They had multiple employees investigating a commercial HVAC system, and it's leaking, it's not working properly. Same with the Overland case. The transmission fell out of the car. And, of course, it doesn't work here. I mean, anybody could be looking at the box of cilantro, and it's not like something's broken. Right. So there's no way. Do you think there is a way to have knowledge of a defect of a product like cilantro? There it is. The brain is in a box. Yes, Your Honor. If it was tested, and the test came back positive for E. coli, someone handed that test to my client, I think that would be actual knowledge of a defect. But I also don't think that would help Martin's position in this case. It's obviously a perishable food item. The cilantro that we sold was discarded or eaten by customers. That just means they can't rely on the actual knowledge, exception if actual knowledge cannot be proven. They have to then provide direct pursuit notice, which they could have done in this case in July of 2016 when the Department of Health came knocking on their door. They alerted them that the cilantro possibly caused an E. coli outbreak in the city of Chicago, and they asked specifically for the invoices from the cilantro supplier. So they knew on that day that there was an issue. All they had to do was pick up the phone, five-minute phone call or a two-sentence letter, hey, the Department of Health is saying you sold us contaminated cilantro with E. coli. Can you go look into this? That's all that they needed to do to satisfy the pursuit notice requirement. They didn't do that, though, and they're trying to rely on an actual knowledge exception that the appellate court sort of carved what we believe would be a third exception here to this law, where they allowed allegations from parties who we had no clue existed, that we had no relationship with, to morph into actual knowledge of the defect. Those personal injury plaintiffs all relied on the second kind of exception. They have personal injury, so they don't need to provide pursuit direct notice. But the appellate court even acknowledged that the complaint filed by those personal injury plaintiffs would not satisfy the actual knowledge exception itself. Yet, a moment in time later, Martin Krogus can rely on that complaint, and all of a sudden it does prove actual knowledge. It makes no sense logically. Well, let me ask you this. Connick is a case where individuals who bought Suzuki's refined class action waxers. Are you aware of any cases or discussion in the UCC when we're talking about chain of distribution? Because that's what we have here. There's no doubt that you didn't have any contact with the people who got sick. Neither did Martin have contact with the people who got sick. So it's a little bit different. It's a lot different, it seems to me, from Connick. So is there anything in the UCC or any case that can help us understand a chain of distribution case? Yeah, I think we acknowledged from the beginning here that this was sort of a unique fact pattern. But the closest case was the Microsoft case we cited to you from the Northern District of Illinois, where you had customers sues the retailer, and then the retailer tries to file a third-party complaint against the wholesaler. And in that case, the complaint was dismissed because the retailer never provided pre-sue direct notice before filing their third-party complaint against the wholesaler. And the gist of the decision was, just because you're filing a third-party action doesn't mean your notice requirement is excused. And rightly so, because the law says it's an essential element to these causes of action. And that has to go from buyer to seller. And that didn't happen in this case. And even in Connick, the plaintiffs had argued at length that, well, we've put them on notice. We've put them on notice with not just this generalized information from the public, but also our own complaint. That complaint alleged that the plaintiffs, as individuals, purchased these vehicles, and they were alleged to be defective. According to the appellate court, that should be enough not to just prove notice, but to prove actual knowledge of the defect. In effect, they're saying, someone has alleged your product is defective. You have actual knowledge of the alleged defect at that point. But that's not what the actual knowledge exception is written by this court in Connick. It says it's knowledge of the defect, not knowledge of an allegation. Because those allegations come from the buyer's perspective, not from the seller's perspective. And I think that's the distinction factor between the exception to the rule. And moving on to the third point here. So how do you take the October 2017 lawsuit, Carbone v. Martin, and the wholesalers? Well, actually, my client wasn't a part of that October lawsuit. We were sued by Carbone in April of 2018. And then the personal injury claim was filed. There were many complaints, including all of the wholesalers in June of 2018. And then there was a dismissal of the Carbone third-party complaint. And they wouldn't have been able to sue my client for breach of warranty anyways because there's no parity between them. And so the first chance, if this is what you're getting at about the notice issue, the first chance we had was in July of 2022. And we raised it immediately. And, you know, the trial court eventually agreed with us that notice was not provided and therefore summary judgment was warranted. And the appellate court even acknowledged in their decision that the first chance that the wholesalers had to attack the notice issue was the amended third-party complaint that was filed on July 1st of 2022. So the issue of 2017 doesn't involve my client. But regardless, those cases were voluntarily dismissed once the personal injury claim was filed there, amended lawsuits. Were the wholesalers part of the settlement? So the case was set for trial in, what, March of 20? Correct. Were the wholesalers there? That was only a defense trial for apportionment of liability between the defendants. But there were three wholesalers, an additional one that you see here. So everybody was there at the table ready to go to trial in March of 20, and then everyone settled that matter? Correct. And I think, you know, there was a settlement there. And this is why the late notice was an issue. You know, we're going into that settlement conference with missing a big piece of the puzzle, which is my client couldn't go out and inspect its growing fields in 2016. It's harvesting facilities, the irrigation system, testing all the employees to make sure they weren't contaminated with E. coli, similar to what happened in the restaurant. And so we walk into that settlement conference missing the big piece of the puzzle, the first half of the argument. And, you know, we paid a sizable percentage because of that. Had we been allowed to perform that investigation, things may have looked different. Time is short. I just wanted to move on to the – oh, time is up. Thank you very much. Counsel for the appellee. Could you start with my question? Is this – tell me about jurisdiction. Is this case – are we looking at a final order? Your Honor, I think because of the fact that at this moment I think half my family is watching, I would like to just say thank you for this opportunity. I am Daniel Arnett, and my colleague Mark Bennett and I have really been excited about this and looking forward to it. And I absolutely am ready to jump into whether it's firearm. In fact, it is absolutely right. Here's the situation. So basically it was voluntarily dismissed. We asked the court to allow us to appeal it before it was voluntarily dismissed. It was denied. And once it was voluntarily dismissed – Wait, wait, wait, wait, wait. Why did you – You know, we did the 304A – The last claim was dismissed, right? Yeah. So – Okay. So why did you need – I don't understand the jurisdiction. Was that a final order? No. Yeah. So it was a final order by law once it was voluntarily dismissed, at which point we filed our appeal. Then it gets to the appellate court, and we are successful in our appeal. At that point, somewhere around there, thereafter, the matter is refiled. When it's refiled, it is not the same matter. It is different. It is a different case number. It's a whole different ball of wax. Even in discovery, you argue it's the same. It's different. And why do we know this? Because we brought them back in. Why is this absolutely critical? If the court holds and supports the appellate court's opinion, then there is nothing they can do to get out of the currently pending lawsuit, and we can go to trial in November, and we can have 2406, contingent liability, and we can figure out if there's actually a defect or if there's actually E. coli from the cilantro. If this court overturns the appellate court, then they're going to be automatically dismissed from the current case that's pending. So this is 100% ripe for your consideration. Okay. Now, even though I have all these nice notes and everything here, I did want to touch on a couple of issues that were raised because, obviously, they must be important. So direct notice is defined in the statute of 2607. In the comments, the official comments, it is. Direct notice is considered proper when it advises the seller of the troublesome nature of the transaction. That's the definition. It's right in there. The troublesome nature of the transaction. Then in Connick, and this is what was a bit, has mystified me a little bit in regard to the opponent's position, page 492 of Connick. It's basically, and you can imagine in 1896, the justices were thinking about this. We've defined direct notice as troublesome nature of the transaction. We should guide those relying on this opinion to understand what's the definition of actual knowledge. What is deemed to be sufficient actual knowledge, and it is when the seller is somehow apprised of the trouble of a particular product with a particular buyer. So that's the definition, in Connick, of what actual notice is. Is actual knowledge, excuse me. It is not Malawi, Crest, or Oberlin. Nowhere in Connick does it state that you have to have proof or evidence of a defect. So in your opinion, when did that actual knowledge take place in the stream of events? I tend to agree with the appellate court, for the wholesalers, I tend to agree with the appellate court that they absolutely, 100%, had actual knowledge of the troublesome nature of the transaction in which they were learned of a particular product from a particular buyer when the plaintiffs sued them as direct defendants in June of 2018. Here's the interesting wrinkle. There is no defect. There is no breach. There is no E. coli in our position. And their position. And basically, there is no clock. There's no time. This is such a unique situation where we're so glad that you get to consider it, and perhaps when you reviewed our briefs, we did propose a third exception to take place when a buyer denies the existence of a breach, of a defect. But that's what we have here. We have this rather unique situation where, and I'm so grateful the counsel mentioned this, Learned Hand, which was cited to in Connick by this court, stated that it's not the seller's knowledge of the facts, because of course they know about it already, it's the buyer's determination that there is a claim for a breach. And that is so applicable here because of the fact that the buyer has never claimed there's a breach until we had to. We still, when we go to trial, we will say there's absolutely nothing wrong with that cilantro. If I may, just if you'll indulge me with the facts so you can get the scenario, we are a distributor, as mentioned, and we purchase pallets of cilantro, which includes, I think, 48 crates of this stuff. And on top is ice, and here it is. And we buy it from Lagler, and we buy it from Jack Tuckton. And all we do as the distributor is we get an order from one of our customers, generally a restaurant all across the Midwest, and we go and we take our bags and our gloves and we put it in the bag, and we take the number that they've ordered and we put it in our refrigerator truck and off it goes. Now why is that important? Because we don't touch it. We don't grow it. We don't wash it, and we certainly don't repackage it. Why is that critical? Because there's absolutely no way scientifically, medically, that E. coli can get on that. E. coli is from the farms. That's where E. coli comes from. It comes from the manure of animals, et cetera. So what happens when we get sued for a problem with our produce? Well, we have to go to the source. Now Council mentioned that in July of 2016 we had the Chicago Department of Public Health knocking on our doors. They did. And they came in and they tested our cilantro. And it was negative for E. coli. Not much of a surprise. E. coli goes fast. But, okay, they tested it. Now Council is stating that we should have said, uh-oh, there's a problem. Here's what else we know. We know, one, restaurants have food poisoning. That's kind of a thing. Number two, we sold, we distributed their cilantro, all the cilantro from these two vendors, from other vendors, to 50, 60, 70 other customers. And we had affidavits as we prepared for trial. We did all that. All of whom had tested they had no evidence of illness. So no other customers are complaining of illness. No other restaurants are complaining of illness. And on top of that, we have the negative Department of Health and none of the vendors is calling us and saying, hey, we have a problem. Some of our other customers have had problems with their cilantro. You might want to get rid of what you bought from us. We'll ship you new stuff. Okay, so we absolutely would not call up the vendors who provide excellent produce, who we use all the time, and because we've heard that there's people getting sick at a restaurant in Chicago. We would not do that. Now, the purpose of the UCC notice is to prevent or to defeat commercial bad faith. We get that. And not only is it supposed to defeat commercial bad faith, it is not to deprive a good faith consumer of its remedy, which it was what happened when the trial court granted the motion for summary judgment. It removed Martin Produce's ability under 2406 to bring in the vendors, the source of the product, in this case. Now, there's a couple other things. So we have a situation where there's no defect and we don't have any problems. It's the buyer's mindset. No problems. Then the appellate court considers it and says, okay, when would they have had the actual knowledge? And this is one thing that we don't get into. And don't forget, common practical application of the exceptions, the appellate court noted. I think that makes a lot of sense. Common sense, practical application. And the appellate court said they would have known by June of 2018, the wholesalers, the sellers, because they were direct defendants. Why is that so perfect? And why is that so clear? Because personal injury litigation is much, much more complex than commercial litigation in the sense of a breach of contract. Why do I point this out? Because within the time to file an answer or a dispositive motion, they must say to their clients, they must ask their clients, do you sell cilantro? Yes, we do. So it's a particular seller and a particular product. Did you sell cilantro, as alleged in this personal injury complaint, to Martin Produce? Well, yes, we did. And did you sell to Martin Produce in June of 2016 when these 72 plants ingested it? Yes, we did. And then, of course, it would say, was it bad cilantro? Was it contaminated? Well, no. It was perfectly good cilantro. Every element, as defined under the definition of actual knowledge, is met under COM, on the day they filed their answer. Now, again, why is that critical? If they didn't sell cilantro ever, they're out. If they never sold to Martin Produce, they're out. I add a particular time period, and I think that might be something to consider, because if they're selling cilantro to Martin Produce throughout the year, but they didn't sell any that month, they should be out. Right? So I believe that the appellate court was absolutely correct when they determined that as of July, when they answered, June, July, the plants complaint of 2018, they had actual knowledge of the troublesome nature of their transactions. But there is more, and this cannot be ignored because, again, common sense. They also participated in active litigation about the products to the restaurant through their distributor for 10 more months before the third-party complaint was filed. It's clear that the rule requires that the third-party complaint under 260, for breach of implied warranty of merchantability, must have notice pre-suit or actual knowledge pre-suit. And that makes sense. In this instance, they, in addition to answering the complaint, they received written discovery. And they produced invoices. And they sat in depositions. And they did all these things. Now, why is this critical? I know you all know this extremely well. But in a personal injury situation, it's always, is it my stuff? And if so, are others involved? And if so, what percentage is the involvement so I can assess my risk, so I can assess my exposure? So there's a detailed, intense understanding of the situation. And, in fact, our situation is undeniable. Each of these vendors produced three invoices for three deliveries of cilantro to Martin Produce during the two to three weeks prior to the ingestion period. So by April of 2019, which is when we filed our third-party complaint, they absolutely had actual knowledge. Your Honor, I just blew through a bunch of my notes. But I would just ask that this court consider upholding, that it would uphold the appellate court's opinion, which did find that the actual knowledge exception in Connick, Exception 1, was fulfilled. It applied. And, therefore, the direct notice by the buyer, Martin Produce, was not required in this situation. And, therefore, summary judgment was improper. So we've been talking about Connick, you know, the cases that have gone before. And I think your argument here is that this case is factually and procedurally much different from Connick. Is that what you're saying? Absolutely. It's interesting. It's completely different, yet at the same time, in the middle of Connick, when they put these exceptions into play, it fits perfectly with the exceptions. But it's completely different from Connick. Absolutely. I do think that the third exception that we proposed, and since I have a little time, may I go on to the... Anybody have any questions about the actual knowledge point? So we have suggested the creation of a third exception in this instance. So the third exception, the reason we created it was because it would apply in the unusual situation like this, where a buyer is denying that there's a problem, that there's a defect with what it purchased from the seller, but at the same time is forced to bring in a 2406 contingency action. And that now reminds me of something I wanted to mention. It kind of fits into the flow of this third exception we're proposing. The minute that Carbone brought us back in the case, there was no privity, so for the breach of implied warranty claims, the wholesalers were out. The only procedural vehicle, the only option that Martin Produce had in order to bring in those that provided the product at issue was 2406. And why is that important? Because under 2405, the necessary parties rule, they could not have waited and basically said, okay, we'll go to trial on our own, and then maybe if we win, you're out, don't worry about it, but if we lose, we're going to come after you. They could not do that. And in fact, the trial court, and this is again not at issue, but the trial court already ruled that they are necessary parties, and so that's not at issue. Martin Produce, at that point, in order to, and by the way, we're talking about millions and millions and millions of dollars, so this is not a $25 three crates of cilantro case. This is multi, multi millions that the restaurant is accusing Martin Produce of providing defective E. coli-tainted cilantro that caused all these illnesses, but worse, shut them down for a month and caused them to lose a lot of money. So at this point, Martin Produce has got its hands tied, and there's nothing they can do. Now another thing that fits into this, so, okay, so Martin Produce has to bring in the vendors, and they have not wanted to. Now at one point, there was an argument that, in the briefs, we sat on our hands, we didn't, you know, we, to their detriment, chose not to let them know of the situation. Well, that's actually kind of counterintuitive to how it would work. If we had any inkling that I would be standing before you right now, we probably would have called them up and said, hey, check out your fields. So here's the point. If they had checked out their fields and found out that there was E. coli everywhere, we have a great defense. If they check out their fields and there's no E. coli anywhere, and there could not have been, we have a great defense. There's literally no reason, no motive at all that we would not have wanted them to do this additional investigation. But there was no reason to ask them to do that until there was, and that was when we were forced to bring them in as third-party defendants under 2406. Following the flow, the restaurant says, breach of implied warranty because it's bad and you have bad food. It should be good food, not bad food. We then say, well, if the jury's going to find it's us, it's got to be them too. They need to come in. We brought them in. So what we're suggesting as a third exception in order to avoid the injustice and the unfairness of this particular situation, they're literally common sense, and I also wanted to point out the trial court initially said, common sense dictates that after five years of litigation, everyone knows what's going on and they should be in the case. Summary judgment denied. Then they did a motion to reconsider, strict reading of it, of direct notice, motions for summary judgment granted. Appellate court came back and said, actual knowledge, years of litigation, actual knowledge exception met, summary judgment improper. And now we're back here. With this exception, they're proposing that in situations where buyers are forced to sue the sellers in contingency case and contribution and fault allocation under 2406, that the 2607-3A notice requirement be waived. Any questions? Well, thank you very much. Appreciate your time. Thank you very much, counsel. Counsels for the appellant in reply. What I did not hear in Martin's argument is any answer to the question as to why they didn't provide us with UCC notice. They say that there was no reason to potentially, but at some point they decided to do it. In this case, it was six years later when they filed the amended third-party complaint. But all this could have been solved by a simple UCC notice letter that Martin provided to Jack Tockton and Mark Gallera when they first received notice. And that's significant because one of the purposes of the notice provision of the UCC is so that we can conduct, the seller can conduct a prompt, timely, thorough investigation. We were deprived of that right to do it. Martin could have done it because they had notice. We didn't have that notice. We didn't have the benefit of conducting that investigation. Things that we would have done, such as going out to the fields, looking at the irrigation water, testing the fields, testing the facilities, all those things were deprived because of Martin's failure to provide us with that timely notice. And we do address the issue of timeliness in our briefs. And we talk about there's a couple cases that we've mentioned where notice was not given until, I think it was like eight months after. And we cite those cases in our brief. The Brandon case, the San Antonio case, where in San Antonio the court finds it a matter of law that notice within one year after purchase and eight months after becoming aware of the incident was insufficient to establish reasonable notice as a matter of law. So in this case here, best case is when we receive the third-party complaint that's almost two years too late. That's two years after the original outbreak was identified. Counsel, it sounds like you're suggesting that there's a reasonable time requirement for actual notice. And what is that under the facts of this case? Well, yeah, because under the UCC there's the notice requirement that there's got to be reasonable notice. If we're talking about an exception, an actual knowledge exception, certainly there has to be a reasonableness component for that, too, because you can't make the exception. I'm talking about the time, the time span. What are you saying would be reasonable under the facts of this case? Well, in this particular case, when Martin received the notice, they should have provided it within the first month or two. And when they received the notice from the CDPH, we should have been notified. Given that this, the product that we're talking about here is cilantro, if you had gotten the notice at the time you say would you still have been able to, would the cilantro still be in the fields or the farm, wherever it is, for you to have been able to test it? Yeah, I do this all the time. So what happens is when we do get notice, we've retained consultants. We go out to the fields. We do inspections. We do testing of the fields. We test the irrigation water so we can determine whether there's any evidence, in this case, of E. coli. Whatever it is. But all that stuff is done early on before all that evidence is gone. Well, that's what I'm asking about. Since we're talking about, you know, actually a vegetable or an herb, would that still have existed at the earliest point, which would still have been several months after the occurrence? I would say within two to three months where we would be able to go out to the fields, that would be in substantially the same condition as existed three months earlier. After that, at some point, all that evidence becomes lost for the passage of time. You know, they turn over the crops. They're growing new crops. They're doing harvesting, all those things that happen. So it's got to be, you know, I think that's one of the reasons why you have this UCC, you know, the timeliness requirement. I'm just specifically talking about this case, though, because, as your opponent points out, it's unique in that we're talking about a fairly fragile herb or vegetable that, you know, it's not going to be the same crop is not going to be around eight or nine or ten months later. I don't know. So what I'm asking is are you saying there's a specific time requirement for this, the facts of this particular case? You mentioned three months, but what's that based on? Well, just based on the fact that it's fresh produce and with the process with growing and harvesting. But you don't have any expert testimony to that. You just think it's three months because it's a vegetable and maybe three months seems like a good number? We did have expert testimony, which we did cite in our briefs, and that expert determined that cross-determination is the likely cause, but in terms of time. No, I'm strictly talking about the time. So that's what I'm interested in. Yeah, I'm just saying based on my experience in handling these kinds of cases, that two or three months would be the time. Do I have an expert that says that in this case? No, I don't. Okay. Thank you. Good morning again. Just to touch real quick on this issue of the finality, we certainly, it's a little procedurally complicated, but we do agree with Mr. Arnett and Martin Produce that the court does have jurisdiction over this, even with the refiling, that it is treated as a completely separate case. And the dismissal of the prior case, which was in front of you, the 16L case number, turned the summary judgment order, which was final but not appealable, into a final and appealable order. And certainly we researched it. You have my word on that. I was shocked to find the cases that proved he was correct. And he was. And so that's why we're here. So just we've briefed this a ton. We don't want that to be an issue to have to come back here 10 years from now, probably. But we agree. Getting back to the issues, the issue of the notice being appropriate is it has to alert the seller that the transaction is troublesome and must be watched. The transaction in this case, though, with my client and with Jack Tuckton was with Martin Produce, not with any of these personal injury plaintiffs. We have no relationship with them. And also at the time we were sued by the personal injury plaintiffs, it's almost two years later. The transaction is over. The money was exchanged for cilantro. The cilantro was consumed or thrown out. That said, there's nothing else that could have been watched. And I think that gets more into the purpose of the UCC notice, which is why the law presumably exists. It's to cure the defect, if possible, to protect the ability to investigate, encourage negotiation, try to avoid lawsuits, and to mitigate damages. All of those purposes were violated by Martin Produce's delay or inaction, really, in providing our clients any notice at all. It never happened in the case. With this specific product, I mean, you know, it's a vegetable, but it is also a very fast-growing. It germinates in about seven days, and, you know, it's grown. It has to be consumed very fast because it does not stay fresh very long. It's not like a potato or a carrot. So basically, in this circumstance, what notice would be appropriate? It would almost have to be instant notice. Well, I think the facts of the case really dictate what would be reasonably timely notice. I think the cases do reflect that. But with a good that's going to perish, the faster, the better. Certainly, any notice at all would have put Martin in a better position than they're in today, but it didn't provide any notice. But, you know, it's not like the cilantro is cut down in the fields, disbanded, and their, you know, corn is there tomorrow. They're still growing. If you look at the invoices, my client was still selling cilantro from these same fields through July, at least, and all over the country. And, you know, so if it were true that the cilantro was contaminated with E. coli in June of 2016 when people started reporting that they were sick, it would have been true as well through July, and we would have lost that ability to mitigate damages. Now, luckily, as Mr. Arnett stated, it doesn't seem like there was a defect. Regardless, our ability to investigate the matter was taken away from us, and that's one of the main stated purposes for this law to exist in the first place. The argument is that this is an unusual case, unlike, again, Connick and others, where here the buyer, Martin, denies there's a defect. So this is a contingent kind of claim. It's not straightforward like we see in these other cases. How does that fit in? Yeah, I think, again, that Microsoft case from the Northern District that we cited, the defendant in that case didn't admit there was a defect with the product that sold to the consumer, yet they were still they filed a third-party contingent breach of implied warranty claim. They still had to provide notice before doing that, and they didn't, and there was a dismissal at the pleading stage. We're at the summary judgment stage examining all the evidence, and so I think this case is on a stronger footing than even that case. So the key here is notice of a claim, not notice of a defect. Notice of a claim would be akin to direct notice, which has to come pre-suit. Martin didn't do that. Actual knowledge is totally different based on the fact that it is an exception to the law to begin with. Right, but here you can't have actual notice, it would seem to me. I'd have to think it through, but they're saying we don't have actual notice because we tested, we know there is no defect. So the actual notice is not the same kind of idea as the broken piece at the hospital, right? Right. So is it pre-claim? That's what you're focused on? If you look at all the cases, the direct notice has to occur pre-suit, especially with merchant buyers, because the stated purpose behind this is to try to avoid a lawsuit altogether that's reiterated throughout the court's reasoning and comment. And here, they didn't provide that notice. The fact that actual knowledge may not have been achievable doesn't help them. It just means they can't rely on the exception in the first place. They just have to do this simple process of writing a two-sentence letter to us in July of 2016 or pick up the phone, just call and say, hey, someone's, the Department of Health is saying the cilantro that we resold was contaminated with E. coli and there's 60 people that have food poisoning. You need to look into this and make sure it's not you or let us know if it was you, and then they would throw us to the wolves, so to speak. But that never happened. This is a very simple task that any merchant buyer should be able to achieve. Because they didn't do that, they should not be able to get a third exception, which effectively would rewrite this law that doesn't, the statute itself doesn't state there are any exceptions to it. The court has acknowledged two of them. A third exception, which they're asking for, would effectively rewrite the law. I don't think that's the intent of the legislature. So that should be rejected. I think we've made our point that allegations don't prove actual knowledge. And if they did, there would be no need to have the actual knowledge exception because every single complaint that's ever filed for breach of implied warranty alerts the defendant that someone's claiming your product was defective. In every case you would have actual knowledge, which would be sufficient to satisfy the notice requirement. There wouldn't need to be an exception. And so with that, I know we're out of time. We ask that the appellate court's decision be reversed, that the trial court's decision be reaffirmed in favor of the defendant appellants. Thank you. Thank you very much. This case, agenda number 13, number 130862 and 130863, Melissa Andrews et al. versus Anne, Martin Produce versus Jack Tuckman, Produce et al. will be taken under advisement. For all of you, thank you very much.